

**Jeffrey R. Maguire**, Esq., Partner   o: (212) 939-7229   f: (212) 531-6129
a: 445 Hamilton Avenue, Suite 1500, White Plains, NY 10601
e: jmaguire@stevensonmarino.com

June 6, 2024

*Via ECF*
The Honorable Jessica G. L. Clarke
United States District Judge for the
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:   *Radoncic v. ABC Properties Equities LLC et al.*
               <u>Docket No.: 23-cv-0003-JGLC</u>

Dear Judge Clarke:

    This firm represents Plaintiff Sanel Radoncic in the above-referenced action involving Plaintiff's wage claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against ABC Properties Equities LLC, Fisher Associates, LLC, and Alan Fisher (collectively as "Defendants," and together with Plaintiff as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of Plaintiff's claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). While this letter states only Plaintiff's position with respect to the merits of the federal and state cases, which Defendants dispute as to all aspects of Plaintiff's allegations, the Parties jointly submit to the Court that the settlement is fair and reasonable under *Cheeks*. A copy of the Parties' fully-executed settlement agreement is attached hereto as **Exhibit 1.**[1]

**I.    <u>RELEVANT PRELIMINARY STATEMENT</u>**

    On January 1, 2023, Plaintiff filed an action against Defendants asserting claims under the FLSA and the NYLL. *See* Dkt. No. 1. On February 23, 2023, Defendants filed their Answer. *See* Dkt. No. 12. On May 11, 2023, the parties participated in their first mediation on the matter, which ultimately proved unsuccessful. Subsequently, the parties completed all discovery on the matter, which ended on January 12, 2024.

---

[1] Plaintiff also brings claims for Defendants' alleged violations of the New York Labor Law, which although resolved in the Parties' settlement agreement do not require court approval for dismissal. *E.g. Yunda v. SAFI-G, Inc.*, 2017 WL 1608898, at *2 (Apr. 28, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)).

On April 1, 2024, the Parties participated in a second all-day private mediation with Martin Scheinman, Esq., a mediator with tremendous experience in employment cases, including cases with FLSA/NYLL claims. As a result of the second mediation, the Parties agreed to settle the matter for $145,000.00. Additionally, Plaintiff's counsel respectfully submits an application for one-third of the total net settlement amount after deduction of litigation expenses as attorneys' fees. Plaintiff's counsel incurred $9,512.85 in litigation expenses and seeks $45,162.38 in attorneys' fees.

For the following reasons, the Court should approve the Parties' settlement of Plaintiff's FLSA claims as fair and reasonable.

## II. THE AGREEMENT IS FAIR AND REASONABLE

FLSA claims may be settled and dismissed with prejudice under Rule 41 if such settlement is approved by the Court. *Cheeks*, 796 F.3d at 206-07. Courts approve FLSA settlements "when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *2 (S.D.N.Y. May 25, 2018) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.*.

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.*

### A. Range of Possible Recovery

In his Complaint, Plaintiff alleged that for the entirety of his employment, Plaintiff worked as a superintendent at a seventy-two-unit apartment building located at 9303 Shore Road, Bronx, New York. Plaintiff alleges that he worked from 2013 through October 19, 2022, for seven days per week, working approximately sixty-three hours per week. Plaintiff alleged that while fifty-two of his hours working were scheduled, he worked an additional ten hours handling tenant emergencies outside of his scheduled hours.

For his work, Defendants paid him the following bi-weekly salary for the following time periods paid him a bi-weekly salary in the following amounts: 2016: $1,272.00; 2017: $1,306.00; 2018: $1,340.00; 2019: $1,392.00; 2020: $1,444.00; 2021: $1,496.00; and 2022: $1,548.00. Plaintiff alleged that Defendants failed to pay him at any rate for the hours that his work exceeded forty in a workweek.

Based on NYLL's janitorial exemption, the relevant period of this action was from January 1, 2020 to October 19, 2022, as the FLSA does not provide an exemption for superintendents that work in the building in which they live. Because there were no records kept concerning Plaintiff's hours worked, discovery was based solely on the witnesses' best recollection. While the Parties' disputed Plaintiff's alleged sixty-three hours worked per week, evidence was produced in discovery that Plaintiff began working for a second employer from March 2022 through October 19, 2022. Therefore, Plaintiff's damages based on sixty-three hours per week for the entirety of the applicable period would ultimately not succeed.

Defendants also provided testimony that Plaintiff was aware of Defendants' record-keeping system permitting Plaintiff to provide his overtime hours on a weekly basis, but argued that he failed to do so. There was no dispute that Defendants never paid Plaintiff for any overtime hours, but Defendants disputed that he did actually work any hours over forty. Although discovery was completed, the Parties understood that a trial would be necessary to establish overtime damages under the FLSA and both Parties understood the advantages to avoiding their respective risk.

Based on his allegations, Plaintiff's maximum damages considering sixty-three hours per week for the 145 applicable workweeks was $93,770 in actual damages plus an equal amount in liquidated damages. But as discussed, discovery revealed that Plaintiff was employed at a different location by a different employer for approximately twenty-six of those 145 workweeks. Based on this information learned through discovery, Plaintiff's best-day calculation was $73,361.79 in actual damages. Including liquidated damages, Plaintiff's best-day recovery was $146,723.60. A copy of Plaintiff's damage calculations are attached as **Exhibit 2**. Ultimately, with the help of the mediator, the parties agreed to settle the matter for $145,000.00.

Thus, Plaintiff's recovery of $145,000.00 represents approximately 100% of Plaintiff's maximum recovery of his damages, even including liquidated damages. Courts have found that settlements exceeding 25% of maximum possible recovery to be reasonable. *See Lesser v. TIAA Bank, FSB*, 2020 WL 6151317, at *2 (S.D.N.Y. Oct. 20, 2020); *Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances). Due to the calculation of Plaintiff's damages, in consideration of his best possible day based upon his allegations of hours worked, the Parties submit that this agreement is both fair and reasonable.

B. *Avoidance of Burdens, Expenses, and Litigation Risks*

Further, settling at this stage "avoids the risks and burdens of litigation . . . as well as the costs, uncertainties, and delays inherent in litigation of this nature." *See Lesser*, 2020 WL 6151317, at *2. Indeed, were a settlement not reached at this stage, the Parties would have then proceeded with cross-motions for summary judgment. The Parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiff's claims at an even greater expense. Furthermore, Plaintiff faced substantial risk that a jury might consider his allegations that he worked overtime during a period where he also worked another job to undermine his credibility. Because there were no records of hours kept by Defendants, which of course benefited Plaintiff under the FLSA's record-keeping requirements,

the disadvantages become apparent when a trier of fact questions a Plaintiff's best recollection of hours worked. This settlement eliminates all of those burdens, costs, and risks, which in totality weighs in favor of approval of the settlement.

### C.  Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, this settlement was reached before motion practice and trial. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the negotiations were aggressively pursued on both sides to come to a fair and reasonable compromise. Indeed, the fact that the parties' settlement was reached through the assistance of an experienced mediator strongly indicates a fair and reasonable settlement.

Furthermore, the parties' agreement does not contain a confidentiality clause or a non-disparagement clause. *See Ream v. Berry-Hill Galleries, Inc.*, 2020 WL 8514826, at *2-3 (S.D.N.Y. Dec. 4, 2020) (citing *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *5 (S.D.N.Y. 2015)). Although this settlement only addressed Plaintiff's wage and hour claims, Plaintiff also commenced an action through his union in arbitration involving claims for unlawful termination. Additionally, considering discovery revealed that Plaintiff worked for another employer for six months during his employment with Defendants, it was also important for Plaintiff to negotiate a settlement agreement with finality. While not acceptable in most FLSA actions, courts generally hold that "settlement agreements that release both sides from non-FLSA claims are acceptable when the agreement 'was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel.'" *Zhu v. Meo Japanese Grill & Sushi, Inc.*, 2021 WL 4592530, at *4 (E.D.N.Y. Oct. 6, 2021) (citation omitted). One of the main considerations is that the agreement only concerns a single plaintiff, without any collective or class claims, and the plaintiff is no longer employed by the defendant. *See id*.

Indeed, this Court recently noted that "[j]udges in this District have approved general releases in the context of FLSA settlements but only where the releases were mutual, alleviating concern that the waiver unfairly benefitted only the defendant." *Sehgal v. Benares Fine Cuisine Inc.*, 2023 WL 9183763, at *3 (S.D.N.Y. Dec. 11, 2023). Not only does the Parties' negotiated mutual general release protect Plaintiff from any claims against him during his employment, it protects him from post-employment claims, as Plaintiff did not immediately vacate the premises as a tenant following his termination. Thus, a mutual general release is important for both sides in this matter.

Plaintiff also requests that the Court retain jurisdiction over this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary.

### III.    ATTORNEYS FEES AND COSTS ARE ALSO REASONABLE

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015)

(citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiff's counsel's request that the Court approve fees of one-third of the net settlement is "consistent with the trend in this Circuit." *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiff's counsel's requested fee of $45,162.38, or one-third of the net settlement, is wholly reasonable and consistent with that law.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439.

In order to conduct the lodestar crosscheck, Plaintiff's counsel multiplied the attorney hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Jeffrey R. Maguire, a Partner at the Firm with fifteen years' experience would seek $400.00 per hour. "Courts within this District generally approve rates of $300-$400 per hour for partners in FLSA cases." *Mobley v. Five Gems Mgmt. Corp.*, 2018 WL 1684343, at *4, n.7 (S.D.N.Y. Apr. 6, 2018).

The Firm expended approximately 134 attorney hours and calculated its lodestar to be $53,600.00. Thus, the Firm's requested fee of $45,162.38 does not require a multiplier. Accordingly, Plaintiff's attorneys' fees are reasonable in light of the risk associated with a contingent fee FLSA case. Plaintiff's counsel's contemporaneous billing records are attached as **Exhibit 3**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $9,512.85 in out-of-pocket expenses, comprised of the filing fee, service, mediation fees, and postage. Plaintiff's counsel's expense statement is attached as **Exhibit 4**.

IV.     CONCLUSION

In light of the foregoing, the Parties respectfully request that the Court approve their settlement of Plaintiff's FLSA claims, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms. A proposed stipulation and order of dismissal are attached hereto as **Exhibit 5**.

The Honorable Jessica G. L. Clarke
June 6, 2024
Page 6 of 6

                                                            Respectfully submitted,

                                                            _____
                                                            Jeffrey R. Maguire
                                                           Stevenson Marino LLP

C: Defendants' counsel (via ECF)